Alexander Del Giorno, J.
This is a motion by the claimant for an order permitting the amendment of the notice of claim. The original claim alleged breach of contract by the State by reason of which claimant sustained an additional expense of $39,354.01 due to a change of grade of spoil banks along the Clyde River channel, the relocation of which was the subject of a contract between the State and claimant. The proposed amendment adds allegations of fraud on the part of the State.
The parties entered into a contract on November 23, 1951, for the construction of a portion of the Ontario Thruway, Tyre-Montezuma Section, a total of 4.15 miles in the counties of Seneca and Cayuga, under the terms of which contract the claimant was required to relocate the existing channel of the Clyde River.
A part of the contract, sheet 21 of the drawings for the job, shows a typical section of the channel excavation and spoil banks to be constructed. Sheet 21 did not disclose any limited height or elevation to which the spoil banks could be constructed. Claimant asserts in its reply brief that when the lines of the spoil banks on said sheet were scaled, these showed an elevation of approximately 20 feet in “height”.
The specifications provided in part that the excavated material would be disposed of by “ placing adjacent to both sides of the relocated channel, lines and grades satisfactory to the Engineer.”
The claimant, alleges that it commenced performance of the contract, had partially completed the excavation for the new channel and was wasting the material in spoil banks to a height of approximately 15 feet with the approval of the State engineer in charge, when a rotational slide occurred and a portion of the wasted material and the bank sheared off.
The engineer halted the work and then ordered claimant to construct the spoil banks so as not to exceed a height of eight feet at certain locations and five feet at other locations.
The claimant asserts that it protested in writing the new directions of the engineer as being arbitrary and unlawful, and proceeded to complete the contract under such protest.
In its original claim the claimant sought to recover the additional compensation based upon the breach of the contract by the State, as hereinabove set forth.
By operation of law the silence of the State is its own affirmation that the State’s actions were in accordance with the plans and specifications and not in violation thereof.
The work was completed before March 1, 1954. On that day the Department of Public Works rejected the claim of $39,354.01 *921 submitted pursuant to “ Disputed Work ” clause in the contract. On March 18, 1954, a notice of intention to file a claim was filed with the clerk of this court and the Attorney-G-eneral. On July 30, 1955, claimant filed its notice of claim.
Pending the trial, on October 10,1956, Mr. Ward J. Hager, the State engineer in charge of the design of this particular contract, was examined before trial. The moving papers indicate that he testified in substance that it was the intention of the State to limit the height to which the material in the spoil banks could be placed to a height of 5 feet, and that this determination was made prior to the awarding of the contract. Claimant further alleges that this information was never communicated to prospective bidders and was not set forth in the contract documents. Claimant states that October 10,1956 was the date on which it first learned of such determination. The claim herein is that the withholding of this information by the State constitutes a fraud upon the claimant.
The State contends, however, that the proposed claim fails to state a cause of action, and that, even if a cause of action were stated the claim is not duly filed, because more than six months have elapsed since the cause of action accrued.
The latter contention is not tenable. An action in fraud arises when the fraud’ is discovered. Only then does the Statute of Limitations begin to toll. (Nasaba Corp. v. Harfred Realty Corp., 287 N. Y. 290.)
The motion papers herein having been filed on November 26, 1956, only one month and 16 days after the alleged fraud was discovered, it is apparent that if the filing of the proposed amended claim were permitted, such filing would be timely. Indeed, the court would hold that if the claimant withdrew the original claim, and refiled his amended claim as a new claim, within six months from October 10,1956, such claim was timely filed.
Involved here is a question of elemental right as well as the application of judicial decisions. Whether or not there was fraud, concealment, or misrepresentation on the part of the State’s engineer of a material fact is a question of proof of the trial. It is sufficient to determine at this time only if this serious and important allegation of the claimant should be permitted to become a part of the pleadings. Material facts of which the pleader was ignorant at the time of the former pleading must be alleged at the time of the supplemental pleading. (Horowitz v. Goldman, 112 App. Div. 13.)
Thus it is not the timeliness of the filing of the claim that is to be considered herein, but whether or not the original claim *922 may be amended by adding thereto the five enumerated paragraphs which spell out the alleged fraud by the State. The granting or denying of a motion for leave to amend a pleading is a matter for the court’s discretion, which is exercised with liberality to the end that the applicant may have an opportunity to raise and have determined all questions affecting his interest involved in the subject matter of the litigation. (Washington Life Ins. Co. v. Scott, 119 App. Div. 847; Milliken v. McGarrah, 164 App. Div. 110; Newman v. Goldberg, 250 App. Div. 431.) It may be that at the trial what, out of context, seems like fraud, may not be proof of fraud at all. But that is for the trial, since leave to amend is no adjudication as to the effect of the evidence to be offered under the proposed amended pleading. (Michigan S. S. Co. v. American Bonding Co. of Baltimore, 109 App. Div. 55.) The State does not contest the interpretation of Hager’s testimony by the claimant, but asserts that the facts revealed by such testimony do not constitute a cause of action. The court, upon the motion, determines that the new matter elicited at the examination could constitute a very important element of the cause of action.
Sheet 21 of the drawings, upon being scaled by claimant, showed a permissible height for the spoil banks up to approximately 20 feet. The claimant undertook to construct the spoil banks to about 15 feet with the approval of the engineer in charge. Only after the slide occured did the engineer restrict the height to five feet and eight feet as aforesaid. According to the pleadings, such intention of the State to restrict the elevation of the spoil banks by the State was a very material fact known only to the State, which fact, had it been disclosed to claimant, might have brought about a very different contract.
The State, it is further claimed, also misled the claimant by attaching sheet 21 to the contract, leaving off all measurements but conveying the inference to the contractor that he could go up to almost 20 feet in creating spoil banks — a great advantage to him in time, labor and machines. The State contends that if this motion were to be granted, its undisclosed intent to restrict the height of the spoil banks would expose the State to liability and that this 1 ‘ would establish such extravagant principle of liability as the law of the case.” The court cannot agree. One cannot, in the dark, lead another to the brink of danger, allow him to fall over, and then say, “ It was his fault, he did not look.” Assuming the truth of these allegations by the claimant, as we must for the purpose of this motion, we cannot escape the conclusion that the State should have put all its cards on the table.
*923 A contract, when prepared by the party who is charged with fundamental knowledge of all its details, should embody all the elements required for its performance, the good and the bad, so that in reliance upon them all a proper bid may be submitted. The State should set such example. (Atlanta Constr. Co. v. State of New York, 103 Misc. 233.)
The State does not deny the propriety of the first claim. The amended claim demands the same amount of damages, but adds the alleged fraud or concealment of a material fact.
The State itself has furnished the information upon which the alleged claim of fraud is sought to be added to the original claim. It certainly should not be the one to object to this motion, for the court is sure the State is more interested in a true adjudication of the subject matter than anyone else.
It is also true, as the State contends, that the claimant did not rely upon the alleged concealment but undertook the performance of its contract upon its interpretation of the contract. We cannot disregard, however, the meaning of sheet 21 of the drawings, in the overall consideration of the contract.
The State asserts, too, that false representation does not give rise to a cause of action unless it is relied upon and the reliance thereon results in injury. (Sager v. Friedman, 270 N. Y. 472; Heller v. Brown, 101 N. Y. S. 2d 355.) But here we find no false representation made upon which the claimant placed reliance resulting in injury to it. Bather, there is here charged the concealment of a very material element which allegedly caused it severe losses.
The case of Jackson v. State of New York (210 App. Div. 115) is akin to this one. There, plans upon which a contract was made for excavating in the construction of a section of the Barge Canal provided for excavation of sand and gravel or loose material, whereas in fact the material excavated was hardpan requiring different tools and more expenses to excavate. It was proven that the State knew it was hard-packed material, but its contract and plans did not disclose that fact. The Appellate Division stated (p. 119), “ It was more than a failure to state all the facts in the State’s possession. It was a representation of a fact entirely contrary to the actual fact known by the State when the representation was made.”
In that case, also, the defense was that since the claim was based upon fraud, it was a tort over which the court did not have jurisdiction. The court said, however (p. 122), “It is true that the claimant sought*to recover his damages caused by a representation which was false, but that did not make it *924 a claim in tort. * * * Such a claim would not be in tort, although the facts might have justified a tort action.” It may well be asked why the State intended to limit the height of the spoil banks to five feet. Did this reflect merely idle talk in the office of the engineer or indeed was it based upon knowledge of the terrain? This is a matter for proof at the trial, a serious matter if the allegation be found to be true. The claimant, in the proper presentation of its case, has no alternative but to make the instant motion, so as to be enabled fully to present its proof.
The court holds, therefore, that the State will not be harmed at all by the granting of this motion. The amount claimed is the same; the testimony upon which the amendment is sought is available to both sides; the proof to be adduced at the trial with or without the amendment would be the same, except that now the claimant may or may not be able to prove that the State concealed, with intent, a material element of the contract, which had it been known to claimant might have obviated the necessity of the filing of the claim.
Settle order on notice.